# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>GEORGIA C. BACH,<br><br>              Debtor.<br><br>CEDAR FUNDING, INC.,<br><br>              Movant,<br>vs.<br><br>GEORGIA C. BACH, Debtor,<br><br>              Respondent. | Chapter 11<br><br>No. 4:06-bk-01614-JMM<br><br>**MEMORANDUM DECISION** |

This court heard evidence concerning Cedar Funding, Inc.'s Motion for Relief from the Automatic Stay on January 5, 2005. Cedar Funding was represented by Walter F. Wood; the Debtor appeared *pro se*. After consideration of the evidence, the arguments of the parties, and the law, the court now rules.

## JURISDICTION

This court has jurisdiction over this core proceeding. 28 U.S.C. §§ 1334 and 157(b)(2)(G).

## ISSUE

The issue is whether the automatic stay, created by operation of law pursuant to 11 U.S.C. § 362(a), should be modified or dissolved.

Although the Debtor has listed other issues in the Joint Pretrial Statement, those issues relate to whether Cedar Funding has a valid lien, or whether other legal or equitable reasons exist which would prevent the enforcement of Cedar Funding's Note and Deed of Trust. These issues are not material to stay relief proceedings, which are limited to the issues set forth in 11 U.S.C. § 362. *See, e.g., In re Vitreous Steel Prods. Co.*, 911 F.2d 1223 (7th Cir. 1990).

To the extent that Debtor wishes to raise such issues, or to contest the validity, extent, or priority of Cedar Funding's lien, she may file an adversary proceeding pursuant to FED. R. BANKR. P. 7001(2).

## PROCEDURE

The Debtor filed a chapter 11 proceeding on December 13, 2006. It was filed on the heels of the lifting of the stay, relating to the same property at issue, in the Debtor's husband's case. (*See* Thomas Bach Case No. 4:06-bk-1124-JMM). In this case, although the Debtor was notified that her schedules and statement of affairs were to have been filed by December 28, 2006, they have not been. No request for an extension has been made.

No plan of reorganization has been filed in the Debtor's case.

No master mailing list has been filed.

## FACTS

**A.  Facts Admitted, and Needing No Proof, as Contained in the Joint Pretrial Statement**

The following are the uncontested material facts as stipulated to by the parties in their Joint Pretrial Statement for Final Hearing on Motion for Immediate Relief from the Automatic Stay (re: Commercial Real Property located at 2 Chambers Lane, Carmel Valley, Monterey County, California; APN 189-221-031):

    1.    Georgia Bach filed her chapter 11 case on December 13, 2006.

2

2. Georgia Bach's case was filed within hours of the hearing in which this Court lifted the automatic stay in her husband's chapter 13 bankruptcy case.

3. The commercial property at issue in this lift stay proceeding (and described in the caption, above) (the "Property") is encumbered by two consensual liens; a first lien to The San Juan Company, in the current amount of approximately $1,035,000, plus accruing interest, attorneys' fees and costs; and a second lien in favor of Cedar Funding, in the current amount of $1,050,000, including foreclosure costs of $9,938.30, and attorneys fees of approximately $6,500.00. The second lien has a per diem interest accrual of $396.27.

4. On or about August 3, 2005, Thomas and Georgia Bach executed and delivered to Cedar Funding a Promissory Note secured by a Deed of Trust dated July 29, 2005 (the "Note") (see Ex. 3.) The Note subsequently was modified on September 6, 2005. (See Ex. 3.) A copy of the Note and modification is attached as Exhibit B to the Motion for Relief filed at Docket 13 in Thomas Bach's case, Case No. 4:06-bk-1124-JMM, and is incorporated herein by this reference.

5. The Note and Deed of Trust (see Ex. 2) create a valid, properly perfected, and enforceable lien on the Property, in second place behind the first position lien held by The San Juan Company, LLC, a California limited liability company.

6. Cedar Funding caused the recording of its Notice of Default and Election to Sell Under Deed of Trust on May 24, 2006, in the Official Records of Monterey County (California) at Document No. 55070. (See Ex. 1.)

7. The San Juan Company recorded its Notice of Default and Election to Sell Under Deed of Trust on July 27, 2006, in the Official Records of Monterey County (California) at Document No. 2006065991.

8. The Property has unpaid real property taxes whose priority is senior to both consensual liens, in the amount of roughly $17,000, plus accruing interest.

9. Prior to the commencement of the case, Cedar Funding commenced a Trustee's Sale scheduled to be held on September 22, 2006, for the Bachs' failure to make the required monthly payments in the amount of $10,500.00 each beginning March 1, 2006, and each month thereafter, plus accrued and accruing interest, late charges, account servicing fees, and attorney's fees and costs, all in the amount shown

above. As of December 31, 2006, the amount claimed by Cedar Funding will be $1,033,137, with a per diem of $396.27 and foreclosure costs of $9,938.30 and attorneys' fees of approximately $6,500.00 for a total of approximately $1,050,000.00.

10. No payments have been made on the San Juan Company first position lien since March 2006. According to the Notice of Default filed by The San Juan Company, the principal amount of its loan is $980,000 and the amount owed as of July 7, 2006, was $70,105.15, plus accrued and accruing interest, late charges, account servicing fees, and attorneys' fees and costs. Cedar Funding believes that without foreclosure costs or attorneys' fees, San Juan Company will be owed as of December 31, 2006, $1,034,816.

B. **Additional Facts, Found By the Court, After Trial**

1. The value of the commercial real property at issue lies within a range of $2,150,000 - $2,400,000 (Affidavit of Glen J. Gurries, dated December 14, 2006).

2. The liens against the subject Property, as of December 31, 2006, are:

| | |
|---|---|
| Real Property Taxes | $ 17,000 |
| First Lien (San Juan) | 1,034,816 |
| Second Lien (Cedar Funding) | <u>1,050,000</u> |
| | $2,101,816 |

3. The Debtor and her husband have submitted a proposal for purchase of the Property for $2,200,000. (Ex. A.) There was no evidence that that offer was acceptable, but for purposes of this hearing, the court will assume that the offer will be accepted, and also that it will close by February 15, 2007.

4. If the Property were to be sold, there would customarily be a broker's commission of 10%. Here, testimony revealed that the broker would accept only a 3% commission, or $66,000.

5. No other admissible evidence regarding other possible sales was presented.

4

6. If the proposed sale were to occur, there would also be closing costs, title insurance, and related fees which would result in at least another $10,000 in deductions from the purchase price.

7. Interest runs on the existing liens at approximately $803.72 per day, from December 31, 2006, calculated as follows:

| | |
|---|---|
| Interest on Taxes | $ 7.45 per day |
| Interest on San Juan Lien | 400.00 per day |
| Interest on Cedar Funding Lien | <u>396.27 per day</u> |
| | $803.72 per day |

8. Even if the $2.2 million sale were approved today, such sale would take approximately 30 - 60 days to close, adding an additional interest burden of between $24,111.60 and $48,223.20.

9. Thus, the status of the proposed sale offer and payments to be made from the proceeds is:

| | |
|---|---|
| Sale Offer | $ 2,200,000.00 |
| <u>Less</u>: | |
| • San Juan Lien (12/31/06) | (1,034,816.00) |
| • Cedar Funding Lien (12/31/06) | (1,050,000.00) |
| • Broker's Commission | ( 66,000.00) |
| • Real Property Taxes (12/31/06) | ( 17,000.00) |
| • Interest at $803.72 per day from 01/01/07 - 02/14/007 (45 days)[1] | <u>( 36,167.40)</u> |
| **Total necessary to clear all debt against Property upon sale** | $ 2,203,984.40 |

10. Upon a sale, there would be no money available for payment to unsecured creditors, or the administrative expenses of this case.

---

[1] This is an anticipated closing time, with all variables on timing tipped in favor of the Debtor.

11. The court therefore finds that there is no equity in the Property.

12. The Debtor has filed no plan of reorganization.

13. The first lienholder on the Property has received no payments on its loan since March, 2006.

14. The second lienholder on the Property has received no payments since at least August, 2006.

15. Of the seven (7) tenants using the subject commercial Property, only four (4) are currently paying rent.

16. The Property is not producing sufficient income to pay its operating expenses and debt service, and, as a consequence, each of the lienholders against the Property is being injured economically.

17. Even a sale at $2,200,000 will not effectively result in a reorganized debtor. Such sale will merely pay existing lienholders, which desire to proceed in a non-bankruptcy forum instead of bankruptcy court. Unsecured creditors will receive no benefit from the consensual sale of the Property proposed by the Debtor, in any event.

## THE LAW

The Bankruptcy Code, 11 U.S.C. § 362(d) provides, in pertinent part:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay–

    (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

    (2) with respect to a stay of an act against property under subsection (1) of this section, if--

        (A) the debtor does not have an equity in such property; and

        (B) such property is not necessary to an effective reorganization; . . . .

11 U.S.C. § 362(d).

6

Case 4:06-bk-01614-JMM    Doc 38    Filed 01/05/07    Entered 01/05/07 15:02:52    Desc
Main Document    Page 6 of 9

Congress intended that stay relief proceedings be summary in nature, wherein the only issues are to be the "lack of adequate protection, the debtor's equity in the property, and the necessity of the property to an effective reorganization of the debtor, or the existence of other cause for relief from the stay." *Computer Communications, Inc. v. Codex Corp. (In re Computer Communications, Inc.)*, 824 F.2d 725, 729 (9th Cir. 1987) (quoting S.Rep. No. 989 at 55, *reprinted in* 1978 U.S.C.C.A.N. at 5841). The validity of a lien or claim may not be litigated during the hearing, but only whether there is a "colorable claim of a lien" on the property. *See In re Vitreous Steel Prods. Co.*, 911 F.2d 1223, 1234 (7th Cir. 1990); *Johnson v. Righetti (In re Johnson)*, 756 F.2d 738, 740 (9th Cir. 1985).

"Cause" is not clearly defined in the Bankruptcy Code: its existence must be determined on a case-by-case basis in the court's discretion. *Benedor Corp. v. Conejo Enters., Inc. (In re Conejo Enters., Inc.)*, 96 F.3d 346, 352 (9th Cir. 1996); *Deronde v. Shirley (In re Shirley)*, 134 B.R. 940, 943 (9th Cir. BAP 1992).

"Equity" is defined as "the value, above all secured claims against the property, that can be realized from the sale of the property for the benefit of the unsecured creditors." *Pistole v. Mellor (In re Mellor)*, 734 F.2d 1396, 1400 n.2 (9th Cir. 1984). All liens against the encumbered property should be counted in determining whether the debtor has equity in the property under § 362(d)(2)(A). *Id.; Stewart v. Gurley*, 745 F.2d 1194, 1195 (9th Cir. 1984) (equity is "the difference between the property value and the total amount of liens against it").

Lack of equity alone is not sufficient to grant relief from the automatic stay under § 362(d). In addition, such property must not be necessary to an "effective" reorganization. The Supreme Court has interpreted this provision to require a debtor to prove not just that the property is indispensable to its reorganization effort, but that the property is essential for an effective reorganization that is "in prospect." This means that there must be a *"reasonable possibility of a successful reorganization within a reasonable time."* *United Savings Ass'n v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 375-76, 108 S. Ct. 626, 633, 98 L. Ed. 2d 740 (1988) (emphasis added). A reorganization plan that is "wholly speculative" is not feasible and cannot be confirmed. *See Wiersma v. O.H. Kruse Grain & Milling (In re Wiersma)*, 324 B.R. 92, 112 (9th Cir. BAP 2005).

Case 4:06-bk-01614-JMM    Doc 38    Filed 01/05/07    Entered 01/05/07 15:02:52    Desc
Main Document    Page 7 of 9

The court "should not, at the conclusion of the debtor's case, be left to speculate about important elements and issues relating to the likelihood of an effective reorganization." *In re Anderson Oaks (Phase I) Ltd. P'ship*, 77 B.R. 108, 110 (Bankr. W.D. Tex. 1987).

## APPLICATION OF LAW TO THE FACTS

With no plan before the court, and with the proposed sale offer being inadequate to pay any of the Debtor's unsecured creditors, there is no effective plan of reorganization that can be proposed by the Debtor, at least insofar as the subject Property is concerned.

Creditor Cedar Funding proved that the Property in question has no equity. 11 U.S.C. § 362(g)(1). Therefore, as there is no equity in the Property for the benefit of the unsecured creditors, cause exists to lift the stay so that the secured creditors, whose interests are eroding daily, can protect themselves through foreclosure.

Additionally, with no schedules, master mailing list, statement of affairs, or proposed plan of reorganization before the court, and with only a "short" sale proposed by the Debtor (i.e., inadequate to pay all liens and costs of sale), the court finds that the Debtor has no chance, on this record, of proposing a feasible plan within a reasonable period of time. Thus, the Debtor did not carry her burden of proof on this required issue. 11 U.S.C. § 362(g)(2).

Finally, because any money received from the rental income is not being utilized to pay either of the secured creditors, nor the delinquent real property taxes, the court concludes that such secured creditors are being irreparably injured, and that such injury constitutes a lack of adequate protection. 11 U.S.C. § 361. Lack of adequate protection constitutes "cause" for lifting the automatic stay. 11 U.S.C. § 362(d)(1).

## RULING

Cedar Funding's motion for stay relief shall be granted and the automatic stay of 11 U.S.C. § 362(a) shall be dissolved as to Cedar Funding, Inc. and to any senior secured creditors on such commercial

8

real property. Simultaneously with the entry of this Memorandum Decision, the court will issue its order denying the Debtor's request to use the cash collateral.

A separate order will issue pursuant to FED. R. BANKR. P. 9021. Any party wishing to appeal has ten (10) days from the entry of the order within which to do so. FED. R. BANKR. P. 8002. Arrangements may be made with the court's reporter to obtain copies of the transcript.

DATED: January 5, 2007.

JAMES M. MARLAR
UNITED STATES BANKRUPTCY JUDGE

COPIES served as indicated below
this 5th day of January, 2007, upon:

Georgia C. Bach
1967 West Calle Mecadora
Tucson, AZ 85745-2124
U.S. Mail

Walter F. Wood
110 S. Church Ave., Ste 4398
Tucson, AZ 85701
Email walterfwood@aol.com

Office of the United States Trustee
230 North First Avenue, Suite 204
Phoenix, AZ 85003-1706
U.S. Mail

By /s/ M. B. Thompson
    Judicial Assistant